UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-62398-CIV-DIMITROULEAS

APOLLO MANAGEMENT GROUP, INC.,

      Plaintiff,

v.

DOUGLAS B. CROXALL and
NATASHA ALLAS CROXALL,

      Defendants.

_____/

## DEFENDANT'S VERIFIED MOTION FOR ATTORNEYS' FEES

Defendant Douglas B. Croxall ("Defendant" or "Croxall"), pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and Rule 7.3 of the Local Rules of the Southern District of Florida, hereby files his Motion for an Award of Attorneys' Fees Against Plaintiff Apollo Management Group, Inc. ("Plaintiff" or "Apollo").  As grounds, Defendant states:

## I.    PRELIMINARY STATEMENT

In this Court's Order dated October 6, 2023 [D.E. 38], the Court dismissed ***with prejudice*** (i) Plaintiff's claim for violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 (the "Exchange Act Claim"); (ii) Plaintiff's claim for violation of Section 517.301 of Florida's Securities and Investor Protector Act (the "FSIPA Claim"); and (iii) Plaintiff's "Holder Claims" (collectively, the "Dismissed Claims").  Because each of these claims was dismissed with prejudice, Defendant clearly is the prevailing party.  As such, Defendant should be awarded fees incurred in connection with defending against the Dismissed Claims, for the following reasons.

    1. First, Defendant is entitled to an award of fees pursuant to Section 5(b) of the SPA, which provides that "[t]he prevailing party in any dispute resolution process ***involving this Agreement*** and its terms and provisions shall be entitled to recover from the other party its reasonable attorney's fees and costs."  This provision

applies to the Dismissed Claims because each of the Dismissed Claims directly relates to and is "inextricably intertwined" with the existence of the SPA. *See, e.g., Dolphin LLC v. WCI Communities, Inc*., 715 F.3d 1243, 1250–51 (11th Cir. 2013) (where contract provided for entitlement to fees in disputes "arising out of" the contract, the prevailing party was entitled to fees incurred in defending against statutory claims that were "intertwined" with the contract); *Caufield v. Cantele*, 837 So. 2d 371 (Fla. 2002) (contractual fee provision applied to fraudulent inducement claim that was "intertwined" with the contract).

2.  Second, Defendant is alternatively entitled to an award of fees pursuant to the fee-shifting provision of FSIPA, which provides that "[i]n any action brought under this section, including an appeal, the court ***shall*** award reasonable attorneys' fees to the prevailing party unless the court finds that the award of such fees would be ***unjust***." *See* Fla. Stat. § 517.211(6) (emphasis added). Here, an award of fees would clearly not be "unjust," because among other reasons, Plaintiff is a well-resourced corporation, and because Plaintiff's FSIPA claim lacked substantial justification, as demonstrated by the dismissal of the claim with prejudice at the pleading stage. *See, e.g., BJCC, LLC v. LeFevre*, No. 8:09-CV-551-T-17EAJ, 2011 WL 5597305, at *2 (M.D. Fla. Oct. 11, 2011).

3.  Third, Defendant is alternatively entitled to an award of fees pursuant to the Private Securities Litigation Reform Act ("PSLRA"), which mandates that the court conduct a Rule 11 analysis of Plaintiff's Exchange Act claim. *See* 15 U.S.C. § 78u–4(c)(1). Here, in connection with its Exchange Act claim, Plaintiff improperly and repeatedly asserted a baseless "holder claim" theory of liability under the Exchange Act, despite the case law holding that such claims were prohibited. Because Plaintiff did not even try to make a good faith argument to extend Exchange Act liability to include "holder claims," an award of fees is warranted under the PSLRA.

For these and other reasons discussed below, Defendant respectfully requests that the Court enter an order finding that Defendant is entitled to an award of attorneys' fees incurred in connection with the defense of the Dismissed Claims, in the amount of **$61,650.50**. In accordance with Local Rule 7.3, the hours expended by Defendants' respective counsel, as well as their respective qualifications, experience, and reputations, are set forth in the attached Affidavits. ***See* Exhibits 1-3**. Also attached is an affidavit from Defendant's expert, Craig Rubinstein, Esq., confirming that the hourly rates and number of hours Defendant expended on the Dismissed Claims are reasonable. ***See* Exhibit 4**. Additional support for this fee award is stated below.

## II.    PROCEDURAL BACKGROUND

On December 22, 2022, Plaintiff filed its original seven-count Complaint in this matter against Croxall and his wife Natasha.  [DE 1].  In it, Plaintiff attempted to plead claims for violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 (the "Exchange Act Claim"), violation of Section 517.301 of Florida's Securities and Investor Protector Act (the "FSIPA Claim"), common law fraud, negligent misrepresentation, conversion, unjust enrichment, and violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA" Claim).  On March 29, 2023, this Court granted Defendants' motion to dismiss each of the claims in the Complaint without prejudice, except for the unjust enrichment count, which was dismissed with prejudice.  [DE 22].

On April 11, 2022, Plaintiff filed an Amended Complaint, in which it attempted to replead the Exchange Act Claim, the FSIPA Claim, the FDUTPA Claim, and the claims for common law fraud and negligent misrepresentation.  [DE 23].  On March 29, 2023, this Court granted in part the Defendants' motion to dismiss the Amended Complaint.  [DE 29].  In that order, the Court dismissed with prejudice all claims against Defendant Natasha Croxall and the FDUTPA claim. The Court also dismissed the Exchange Act and FSIPA claims in their entirety without prejudice, based on the failure to allege loss causation.  The Court held that Plaintiff sufficiently stated a claim for common law fraud and negligent misrepresentation, except to the extent those counts were based on "holder claims."

On July 31, 2023, Plaintiff filed its Second Amended Complaint ("SAC"), in which it attempted to replead the Exchange Act Claim and FSIPA Claim against Croxall (Counts II and IV) and also attempted to replead the "holder claims" as part of the common law fraud and

negligent misrepresentation claims (Counts I and III). [DE 30]. Defendant again filed a motion to dismiss the previously dismissed claims, this time with prejudice. [DE 31].

On October 6, 2023, this Court granted Defendant's motion to dismiss. [DE 38]. In that Order, the Court dismissed with prejudice the Exchange Act Claim and FSIPA Claims, and also dismissed with prejudice the holder claims, whether based on the statutory claims for securities fraud or on the common law fraud and negligent misrepresentation claims. *Id*. Following entry of the October 6, 2023 order, the only claims that remain are the claims for common law fraud and negligent misrepresentation, but only to the extent they are based on the alleged pre-SPA representations made by Croxall to Plaintiff's employees.

Pursuant to Local Rule 7.3, a draft version of this Motion was timely served on Plaintiff, and Defendant has undertaken efforts to confer regarding the relief requested in this Motion.

### III.    FACTUAL BACKGROUND

Plaintiff is a Florida corporation that claims to be engaged in both public and private financing and investments. [DE 30, ¶ 1]. Plaintiff has represented itself as an "accredited investor" as that term is defined in Rule 501(a)(3) of Regulation D, meaning that it is a corporation with total assets in excess of $5,000,000. *See* SPA § 3(b) [DE 1, p. 17]; 17 CFR § 230.501. Defendant Croxall is the CEO and Chairman of Crown Electrokinetics Corp. ("Crown"). [DE 30, ¶ 2]. Crown is a publicly traded company that develops a proprietary "smart glass" window tinting technology. *See* https://www.crownek.com/about.

On November 10, 2021, Plaintiff entered into a Stock Purchase Agreement ("SPA") pursuant to which it purchased 1,000,000 shares of restricted Crown common stock (the "Crown Stock") from the Trust for $900,000. [DE 30, ¶¶ 10, 119; DE 1, Ex. A]. Non-party Croxall Family

Revocable Trust (the "Trust") was the seller.  Croxall and his wife, non-party Natasha Croxall ("Natasha"), were co-trustees of the Trust when the SPA transaction closed.[1]

The stock purchase was a private transaction exempted from securities registration pursuant to Section 4(a)(7) of the Securities Act of 1933.  [DE 1, Ex. A].  The $0.90/share purchase price was a substantial discount from the publicly traded price of $3.90/share at that time.  [DE 30, ¶ 118].  Plaintiff expressly represented in the SPA that it "underst[ood] that its investment in the shares of [Crown] Stock involve[d] a high degree of risk."  [DE 1, Ex. A, §§ 3(b), 3(d)].

Pursuant to the restrictions on the Crown Stock purchased by Plaintiff, Plaintiff could not register or sell the shares for a six-month period, i.e., until May 10, 2022, at the earliest.  [DE 30, ¶¶ 10, 108].  When the restriction period expired on May 10, 2022, shares of Crown common stock were trading on the Nasdaq at $1.00/share.  [DE 30, ¶ 118].  Plaintiff did not take steps to register the Crown Stock at that time.  As of December 22, 2022, Crown's stock price dropped to $0.163/share.  Id.  Plaintiff commenced this action on that date.

In an effort to plead its Exchange Act and FSIPA Claims, Plaintiff alleged that Croxall made a series of oral misrepresentations via telephone calls "in order to entice Plaintiff to enter into the [SPA], and then, later, to refrain from selling the Crown Stock into the open market."  [DE 30, ¶ 36].  Plaintiff alleged that, among other things, Croxall misrepresented that: Crown had entered into Master Service Agreements ("MSAs") with four different Real Estate Investment Trusts to install Crown's products in multiple real estate development projects, and that the MSAs "locked in" $50 million in new business [DE 30, ¶¶ 23-24, 39-41, 52, 63]; and that Crown "had

---

[1] Pursuant to the SPA, Croxall and his wife, as co-trustees of the Trust, had "the right, but not the obligation," to exercise a 90-day "Call Option," pursuant to which the Trust could repurchase the shares for $1,567,000 between February 8, 2022 and February 18, 2022.  [DE 30, ¶ 20; DE 1, Ex. A, § 2(a)].  The Call Option was not exercised.  [DE 30, ¶ 11].

secured . . . financing" to construct a second manufacturing facility to satisfy orders under the new MSAs [DE 30, ¶ 42, 63].

As this Court held, Apollo failed to allege the loss causation element of the Exchange Act and FSIPA Claims.  Apollo did **not** allege that the actual value of the 1,000,000 restricted Crown shares purchased by Apollo was worth less than the purchase price ($900,000) on the date of the purchase.  Instead, Apollo alleged that it was damaged by a post-purchase drop in the stock price, from $3.90/share on November 10, 2021 (the date of the SPA) to $0.163/share on December 22, 2022.  [DE 30, ¶¶ 118, 124-125, 156].  However, Apollo failed to allege a "connection between" the alleged pre-purchase representations and the post-purchase drop in stock price.  [DE 38, p. 9].  As this Court held, the SAC failed to add "any factual allegations that explained why Crown's stock price dropped to $0.163/share on December 22, 2022, much less [did] it allege how such decline was directly caused by any of the particular misrepresentations allegedly made by Croxall in the context of a private transaction prior to the November 10, 2021, SPA."  [DE 38, p. 10].  The Exchange Act and FSIPA claims were thus dismissed with prejudice.  *Id.*

To assert its "holder claims," Apollo alleged it "wanted to sell" the Crown Stock upon the expiration of the six-month holding restriction on May 10, 2022, but that Croxall induced Apollo to refrain from doing so.  [DE 30, ¶ 110].  However, Plaintiff alleged that, even after the six-month restriction expired, Plaintiff "could not lawfully sell" the Crown Stock.  [DE 30, ¶ 105].  For this and other reasons this Court dismissed the "holder claims" with prejudice.  [DE 38, pp. 12-14].

## IV.    ARGUMENT

### A.    Defendant is Entitled to Fees Under Section 5(b) of the Parties' SPA

Section 5(b) of the Parties' SPA contains a prevailing party fee-shifting provision.  It states:

> Attorney's Fees.  The ***prevailing party*** in any dispute resolution process ***involving this Agreement*** and its terms and provisions shall be entitled to recover from the other party its reasonable attorney's fees and costs.

*See* Exhibit 1, § 5(b) (emphasis added).  Croxall was clearly the "prevailing party" with respect to Apollo's Exchange Act Claim, FSIPA Claim and holder claims, because each of those Dismissed Claims were dismissed with prejudice at the pleading stage.

Accordingly, the question here focuses on whether the Dismissed Claims are properly categorized as claims "involving" the SPA such that they fall within the scope of Section 5(b) of the SPA.  As discussed below, because the Dismissed Claims are all "inextricably intertwined" with the SPA, the SPA's fee-shifting provision applies, and Defendant is entitled to an award of attorneys' fees.

### 1.      Legal Standard

Federal courts "apply state law in determining the meaning of a contractual attorney fee provision." *Azar v. Nat'l City Bank*, 382 F. App'x 880, 886 (11th Cir. 2010).  "Under Florida law, attorney's fees may be awarded to the prevailing party pursuant to a contractual agreement authorizing their recovery." *Pretka v. Kolter City Plaza II Inc.*, No. 09-80706-CIV, 2013 WL 7219294, at *1–2 (S.D. Fla. Sept. 11, 2013).  "The Court does not have discretion to decline to enforce a contractual provision awarding attorney's fees as such provisions are mandatory." *Id.* (citing *Lashkajani v. Lashkajani*, 911 So.2d 1154, 1158 (Fla. 2005)).

Under Florida law, contractual fee-shifting provisions such as the one in the SPA have been held to apply to tort claims and statutory claims that are "inextricably intertwined" with the contract at issue. *See, e.g., Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250–51 (11th Cir. 2013); *Azar*, 382 F. App'x at 886.  The "inextricably intertwined" test was adopted by the Florida Supreme Court in *Caufield v. Cantele*, 837 So. 2d 371, 379 (Fla. 2002).  In *Caulfield*, the parties' purchase agreement provided for "attorney's fees in connection with any litigation 'arising

7

out of' the contract." *Id*. at 373.  After closing on the purchase, the buyers brought tort claims

alleging concealment of defects and fraudulent misrepresentations as to the condition of the

property purchased.  *Id*.  The defendant prevailed on the tort claims, and the Florida Supreme Court

held that defendant was entitled to fees under the contract, reasoning that:

> [T]he fraudulent misrepresentation complained of in this case could be correctly
> characterized as a tort stemming from or arising out of the failure of one party to
> carry out its contractual duty to reveal defects in the property.  ***Had there been no
> contract, the ensuing misrepresentation would not have occurred***.  Therefore, ***the
> existence of the contract and the subsequent misrepresentation in this case are
> inextricably intertwined*** such that the tort complained of necessarily arose out of
> the underlying contract. As a result, the contractual provisions, including the
> prevailing party clause, should be given effect.

*Id*. at 379 (emphasis added); *see also Bushnell v. Portfolio Recovery Assocs., LLC*, 255 So. 3d 473,

476 (Fla. 2d DCA 2018) ("To apply the inextricably intertwined test from *Caufield* in this case,

we must consider whether the … cause of action could have occurred absent the existence of the

… contract").

Courts applying Florida law have consistently followed *Caufield* in finding that contractual

prevailing party fee provisions apply to claims of ***fraud in the inducement***, because such claims

could not have occurred absent the existence of the contract.  *See, e.g., Azar*, 382 F. App'x at 886–

87 ("the fact that [plaintiff] has asserted a tort claim of fraudulent inducement does not preclude

application of the contractual provisions for attorneys' fees" in the loan agreement at issue, where

the plaintiff alleged that he was "induced [into] the contracts or loans at issue" and "the relief

requested [by plaintiff] was the rescission and cancellation of his mortgage"); *Kadiyala v. Pupke*,

No. 17-80732-CIV-KAM, 2022 WL 17592802, at *2 (S.D. Fla. Aug. 24, 2022) (where plaintiff

prevailed in claim against defendant for "ma[king] fraudulent misrepresentations which induced

him to enter into the Stock Purchase Agreement," plaintiff was entitled to fees under the contract's

fee-shifting provision because "the misrepresentations and the existence of the Stock Purchase

Agreement [were] 'inextricably intertwined'"); *Regions Bank v. Kaplan*, No. 8:12-CV-1837-T-17MAP, 2018 WL 4403828, at *4 (M.D. Fla. June 25, 2018), report and recommendation adopted, No. 8:12-CV-1837-T-17MAP, 2019 WL 1417851 (M.D. Fla. Mar. 29, 2019) (fee provision in bank's deposit agreement applied to plaintiff's negligent misrepresentation claim).

Moreover, the "inextricably intertwined" test from *Caufield* applies to **statutory** claims as well. *See, e.g., Dolphin*, 715 F.3d at 1250–51. In *Dolphin*, the seller of a condominium unit successfully defended against the condo buyer's statutory claims under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) and Interstate Land Sales Full Disclosure Act (ILSFDA), which claims were premised on alleged misrepresentations and omissions in the purchase agreement. *Id*. at 1246. The Eleventh Circuit affirmed the award of fees pursuant to the purchase agreement's attorney-fee provision, because:

> Dolphin's [statutory] claims cannot be separated from the contract with WCI … Dolphin's FDUTPA claim is based on allegedly misleading statements of material fact within the contract. Dolphin's ILSFDA claim is based in part on the contract's failure to include provisions required by the ILSFDA. In sum, ***Dolphin has alleged no claim that could exist without the contract***.

*Id*. at 1251 (emphasis added); *see also Brannon v. Westgate Resorts, Inc.*, No. 619CV1750ORL40LRH, 2021 WL 2515223, at *5 (M.D. Fla. Jan. 5, 2021), report and recommendation adopted, No. 6:19-CV-1750-PGB-LRH, 2021 WL 2515203 (M.D. Fla. Feb. 9, 2021) (contractual fee provision applied to statutory claim brought under the Missouri Merchandising Practices Act (MPPA), because the MPPA claim "centered on Plaintiffs' unsuccessful attempts to cancel the purchase contract … and the relief Plaintiffs sought included rescission of the contract."); *Pretka v. Kolter City Plaza II Inc*., No. 09-80706-CIV, 2013 WL 7219294, at *1–2 (S.D. Fla. Sept. 11, 2013) (awarding prevailing party fees pursuant to contract where statutory claim under Fla. Stat. § 718.202(3) was based on disclosures in the contract and it sought the remedy of rescission of the contract).

9

## 2.   Apollo's Exchange Act and FSIPA Claims Were "Inextricably Intertwined" With the SPA

Based on the foregoing case law, Apollo's statutory Exchange Act and FSIPA Claims were "inextricably intertwined" with the existence of the SPA.  Both the Exchange Act Claim and the FSIPA Claim are based on the fundamental allegation that Apollo was induced by misleading representations to "enter into the Stock Purchase Agreement" pursuant to which it purchased the private securities.  [DE 30, ¶¶ 145, 172].  Apollo's claimed damages were based on the theory that "[i]f Apollo Management were not restricted by … the terms of the Stock Purchase Agreement, Apollo Management could have and would have sold its Crown Stock for $1 million …."  [DE 30, ¶ 123].  Moreover, Apollo expressly sought the remedy of rescission of the SPA pursuant to the FSIPA Claim.  [DE 30, p. 34].

Accordingly, neither of these claims "can[] be separated" from the SPA, nor "could [they] exist without the contract."  *Dolphin*, 715 F. 3d at 1251 (statutory claim that was based on "misleading statements" relating to a condo purchase agreement was covered by contractual fee-shifting provision); *see also Pretka*, 2013 WL 7219294, at *2 (statutory claim seeking rescission of contract was necessarily intertwined with the contract at issue).[2]  Because Apollo's statutory Exchange Act and FSIPA Claims were "inextricably intertwined" with the existence of the SPA,

---

[2] The fact that FSIPA and the PSLRA have statutory provisions regarding entitlement to attorneys' fees does not preclude Defendant's reliance on the SPA's contractual fee-shifting provision.  *See Dolphin*, 715 F. 3d at 1250-51.  In *Dolphin*, where the prevailing party obtained dismissal of two statutory claims brought under the ILSFDA and FDUTPA, the Eleventh Circuit expressly rejected the non-prevailing party's argument that "the ILSFDA and FDUTPA attorney-fee provisions are the only recourse [the prevailing party] has for obtaining attorney's fees."  *Id*. at 1250; *see also Brannon*, 2021 WL 2515223, at *5 (where prevailing party could not demonstrate entitlement to fees under statutory provision applicable to statutory claim, prevailing party could still recover fees pursuant to the parties' contractual fee-shifting provision because the statutory claim was intertwined with the contract).

and because Croxall was clearly the prevailing party as to both of those claims, Croxall is entitled to an award of attorneys' fees pursuant to Section 5(b) of the SPA.

### 3.    Apollo's Holder Claims Were "Inextricably Intertwined" With the SPA

Similarly, Apollo's holder claims were inextricably intertwined with the existence of the contract, "such that the tort complained of necessarily arose out of the underlying contract." *Caufield*, 837 So. 2d at 379.  That is, Apollo's holder claims (whether brought under the Exchange Act, FSIPA, or the common law fraud and misrepresentation claims) focus on alleged promises by Croxall to "repurchase" the Crown shares pursuant to the SPA.  The crux of Apollo's holder claim was that it "would have sold all of the Crown Stock on May 10, 2022, the date on which the restrictions on selling the stock expired," but that it was induced into holding onto the Crown Stock based on Croxall's alleged representations that "(1) he would be in a position to repurchase the Crown Stock within a matter of weeks and (2) nondisclosure of the Stock Purchase Agreement … would be cured by the repurchase."  [DE 30, ¶¶ 133, 138].  As with the fraud-based claims in *Caufield*, "[h]ad there been no contract, the ensuing misrepresentation would not have occurred." *Caufield*, 837 So. 2d at 379.

Accordingly, because Apollo's holder claims were "inextricably intertwined" with the existence of the SPA, and because Croxall was clearly the prevailing party as to the holder claims, Croxall is entitled to an award of attorneys' fees pursuant to Section 5(b) of the SPA.

### B.    Defendant is Entitled to Fees under FSIPA (Fla. Stat. § 517.211(6))

Alternatively, with respect to Apollo's FSIPA claim, Croxall is also entitled to an award of attorney's fees pursuant to the fee-shifting provision in the FSIPA statute.  Section 517.211(6) of FSIPA provides:

> In any action brought under this section, including an appeal, the court **shall** award reasonable attorneys' fees to the prevailing party unless the court finds that the award of such fees would be ***unjust***.

Fla. Stat. § 517.211(6) (emphasis added).  This statute "has been interpreted by the Florida courts to allow defendants to recover attorneys' fees to the same extent as plaintiffs." *Schultz v. Hembree*, 975 F.2d 572, 575 (9th Cir. 1992) (citations omitted).

Because Croxall clearly is the "prevailing party" with respect to the FSIPA claim, which was dismissed with prejudice, Croxall is entitled to an award of fees under the statute as a matter of law, "unless the result would be unjust." *Golub v. J.W. Gant & Associates*, 863 F.2d 1516, 1521 (11th Cir. 1989).  "[T]here is little Florida authority construing what the word 'unjust' means within the context of this statute." *Shoreline Foundation, Inc. v. Brisk*, 278 So. 3d 68, 76 (Fla. 4th DCA 2019) (looking to Black's Law Dictionary definition of "unjust" as "[c]ontrary to right and justice, or to the enjoyment of his rights by another, or to the standards of conduct furnished by the laws.").

In determining whether an award of attorney's fees would be "unjust," a court may consider the following factors: "Courts that have considered the issue evaluate the following factors: '(1) the relative economic resources of the parties; (2) the public policy behind the statute authorizing an award of attorney's fees; and (3) whether or not the claims made by the non-prevailing plaintiff were substantially justified.'"  *BJCC, LLC v. LeFevre*, No. 8:09-CV-551-T-17EAJ, 2011 WL 5597305, at *2 (M.D. Fla. Oct. 11, 2011); *see also Durden v. Citicorp Tr. Bank, FSB*, 763 F. Supp. 2d 1299, 1306 n. 5 (M.D. Fla. 2011).

The first factor to consider when determining whether an award of fees would be "unjust" – the relative economic resources of the parties – clearly weighs in favor of an award of fees. Courts interpreting this factor have required that the non-prevailing party must submit evidence demonstrating an "inability to pay."  *See, e.g., BCJJ*, 2011 WL 5597349 at *2 (awarding fees to

defendant under FSIPA where the "[p]laintiff did not provide affidavits or other evidence demonstrating an inability to pay"); *Fernau v. Enchante Beauty Prod., Inc*., No. 18-CV-20866, 2021 WL 1520755, at *5 (S.D. Fla. Mar. 11, 2021), report and recommendation adopted, No. 18-20866-CIV, 2021 WL 1152835 (S.D. Fla. Mar. 26, 2021) (awarding fees under FSIPA where non-prevailing party did not "provide any evidence demonstrating an inability to pay").  Here, the Plaintiff is a sophisticated investment company, and "accredited investor" with assets totaling at least $5,000,000.  Not only does Plaintiff presumably have the ability to pay the fees, but it clearly had the economic resources and sophistication to conduct substantial diligence prior to entering into the SPA and prior to commencing this litigation.

The second and third factors are intertwined because "the relative merit and justification of the plaintiff's claims also factored into the policy consideration." *Durden*, 763 F. Supp. 2d at 1305 n.5.  "Put differently, the policy implications behind a private citizen suit are derivative of the suit's justification—public policy supports private citizen suits of meritorious claims that ultimately fail, but no public policy is vindicated when a private citizen brings a suit without merit or justification." *Id*.; *see also Fernau*, 2021 WL 1520755, at *5.  Moreover, "[w]here the Florida legislature has chosen to make fees available to a prevailing defendant, the Court is not free to simply reject this decision in favor of its own policy judgment." *Durden*, 763 F. Supp. 2d at 1306 n. 6.[3]

---

[3] One court has held that, when interpreting Fla. Stat. § 517.211(6), it would be unjust and contrary to public policy to award fees in favor of a broker against a plaintiff who was "an elderly gentleman, inexperienced in the stock market," where the plaintiff's FSIPA claim was dismissed based on the statute of limitations but was otherwise meritorious.  *Newsom v. Dean Witter Reynolds, Inc.*, 558 So. 2d 1076, 1078 (Fla. 1st DCA 1990).  In contrast to the *Newsome* case, this case involves a sophisticated, well-resourced corporate plaintiff who lost the FSIPA claim not on a technical defense but because Plaintiff was not able to plead the elements of its claim.

Where, as here, a FSIPA claim was dismissed with prejudice at the pleading stage, the FSIPA claim was held not to be "substantially justified" and thus an award of fees in favor of the defendant was deemed appropriate.  *See Fernau*, 2021 WL 1520755, at *5-6; *BCJJ*, 2011 WL 5597349 at *2.   In *BCJJ*, the court determined that the plaintiff's FSIPA claim was not "substantially justified" because "[p]laintiff's FSIPA claim was twice dismissed by the court. Even after Plaintiff amended its complaint, the court found that Plaintiff did not, and could not, state a FSIPA claim against [defendant]…"  *BCJJ*, 2011 WL 5597349 at *2.  Similarly, in *Fernau*, the magistrate judge looked to the fact that the plaintiff's FSIPA claims had been originally dismissed for failure "to plead those claims with requisite particularity" and that even though "[t]he Court thoroughly explained its reasons for dismissal … Plaintiffs failed to remedy their pleading deficiencies when given the opportunity to amend."  *Fernau*, 2021 WL 1520755, at *6.  In adopting this finding, the district court in *Fernau* stated: "[A]s none of the Plaintiffs' [FSIPA] claims survived various motions to dismiss and multiple iterations of the Plaintiffs' complaint, it is hard to state that the Plaintiffs' claims were justified." *Fernau*, 2021 WL 1152835, at *2.

Similar to the *BCJJ* and *Fernau* cases, Apollo was given multiple opportunities to state its FSIPA claim.  Plaintiff's original FSIPA claim was dismissed for failure to state a claim with the requisite particularity.  [DE 22, pp. 7-8].  In dismissing Apollo's First Amended Complaint, this Court thoroughly explained its reason for dismissal of the FSIPA claim – namely, the deficient loss causation allegations.  [DE 29, pp. 10-11].  Despite having the opportunity to amend again, Apollo's Second Amended Complaint failed to add any factual allegations to address that deficiency, resulting in dismissal with prejudice of the FSIPA claim.  [DE 38, pp. 9-10].  In short, the fact that Plaintiff, despite having three tries, was unable to state a claim for violation of FSIPA

14

demonstrates that the claim was not "substantially justified," and thus it would not be unjust or

contrary to public policy to award fees in favor of Defendant under Fla. Stat. § 517.211(6).[4]

Accordingly, because Croxall clearly is the "prevailing party" with respect to the FSIPA

claim, and because the award of fees to Croxall would not be unjust, Croxall is entitled to an award

of fees pursuant to Fla. Stat. § 517.211(6).

**C.      Defendant is Entitled to Fees under the PSLRA (15 U.S.C. § 78u–4(c)(1))**

Alternatively, with respect to Plaintiff's Exchange Act claim, Defendant is entitled to an

award of fees under the PSLRA, because the Exchange Act claim was based on legal theories that

had no reasonable chance of success.

The PSLRA "mandate[s] imposition of sanctions for frivolous litigation." *Thompson v.*

*RelationServe Media, Inc*., 610 F.3d 628, 636 (11th Cir. 2010). The PSLRA provides:

> In any private action arising under this chapter, upon final adjudication of the
> action, the court ***shall*** include in the record specific findings regarding compliance
> by each party and each attorney representing any party with each requirement of
> Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive
> pleading, or dispositive motion.

15 U.S.C. § 78u–4(c)(1) (emphasis added). "If the court finds a party or attorney violated any

requirement of Rule 11(b), the court "***shall***" impose sanctions in accordance with Rule 11."

*Thompson,* 610 F.3d at 636 (quoting 15 U.S.C. § 78u–4(c)(2)).  "[T]he presumptive sanction is

attorneys' fees and expenses." *Id*. (citing 15 U.S.C. § 78u–4(c)(3)). "Accordingly, the PSLRA's

provisions eliminate a district court's discretion on two fronts: (1) in choosing whether to conduct

---

[4] The mere fact that Plaintiff's common law fraud and negligent misrepresentation claims survived, in part, the motions to dismiss, does not mean that it would be "unjust" to award Defendant fees for prevailing on Plaintiff's FSIPA claim.  *See Shoreline Found., Inc. v. Brisk*, 278 So. 3d 68, 76 (Fla. 4th DCA 2019) ("the mere fact that [plaintiff] recovered under only one claim in his multi-count suit … is insufficient to find that an award of fees under Section 517.211(6) was "unfair" or "contrary to standards of conduct furnished by the laws").

the Rule 11(b) inquiry and (2) in determining whether to impose sanctions following a finding of a Rule 11(b) violation." *Id*.

"Although the PSLRA alters the consequences of a Rule 11(b) violation in a private securities fraud action, the substantive analysis under Rule 11 remains the same." *Id*. at 637. "Under Rule 11, sanctions are properly assessed when: (1) a party files a pleading that has no reasonable factual basis; (2) the ***party files a pleading based on a legal theory that has no reasonable chance of success and cannot be advanced as a reasonable argument to change existing law***; or (3) the party files a pleading in bad faith for an improper purpose." *Id*. at 637 n. 12 (emphasis added). In assessing whether Rule 11 has been violated, a court determines "whether a reasonable [litigant] in like circumstances could believe his actions were factually and legally justified." *Meide v. Pulse Evolution Corp*., No. 3:18-CV-1037-MMH-MCR, 2021 WL 4459653, at *9 (M.D. Fla. Sept. 29, 2021) (citing *McDonald v. Emory Healthcare Eye Ctr*., 391 F. App'x 851, 852-53 (11th Cir. 2010)). Thus, "[s]anctions may be appropriate when the plain language of an applicable statute and the case law preclude relief." *Id*. "Likewise, sanctions are warranted when the claimant exhibits a 'deliberate indifference to obvious facts ....'" *Id*.

In asserting its Exchange Act claim, Plaintiff pursued a legal theory that had "no reasonable chance of success." *Thompson,* 610 F.3d at 637 n. 12. In particular, Plaintiff repeatedly asserted "holder claim" liability pursuant to its Exchange Act claim, despite the fact that the case law makes clear that claims based on "holding onto" securities cannot be brought under the Exchange Act. *See, e.g., City of St. Petersburg, Fla. v. Wachovia Bank, Nat. Ass'n.*, No. 810-CV-693- T-26TBM, 2010 WL 2991431, at *3 (M.D. Fla. July 27, 2010) (claim based on "holding" of securities "cannot be brought" under the Exchange Act); *Rushing v. Wells Fargo Bank, N.A.*, 752 F. Supp. 2d 1254, 1262 (M.D. Fla. 2010); *Pafumi v. Davidson*, 2007 WL 1729969 at *3 n. 4 (S.D. Fla. Jun. 14, 2007).

16

These holdings are based on the well-established rule that "only purchasers and sellers of securities" have standing to bring suit under the Exchange Act.  *See Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F. 3d 1276, 1283 (11th Cir. 2007) (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975)).

Indeed, Plaintiff and its counsel were made aware, at least at the time of the briefing of Defendant's motion to dismiss the original Complaint, of the case law holding that "holder claims" are not actionable under the Exchange Act.  [DE 15, p. 1].  The fact that Plaintiff was thus put on notice of this fatal deficiency supports the imposition of Rule 11 sanctions.  *See Parker v. Diverse Staffing Georgia, Inc.*, No. 120CV01913TWTRGV, 2020 WL 10575029, at *15 (N.D. Ga. Dec. 23, 2020), report and recommendation adopted, No. 1:20-CV-1913-TWT, 2021 WL 3367263 (N.D. Ga. Jan. 12, 2021) ("[Plaintiff's] counsel's continued pursuit of these meritless [fraud-based RICO] claims after [Defendant's] motion notified him of their deficiencies and despite having sufficient time to research the issues and either correct the errors or withdraw the claims, merits sanctions in this case…").

Despite such notice, Plaintiff continued to try to assert holder claims under the Exchange Act.  For example, in opposing Defendants' motion to dismiss the First Amended Complaint, Plaintiff continued to insist that its Exchange Act claim could be based on the contention that it was induced into "refain[ing] from selling the stock," but Plaintiff made no effort to distinguish the case law cited by Defendant.  [DE 27, pp. 17-19].  At that time, Plaintiff failed to cite to any contrary case law or legal authority that would support its holder claim theory of liability under the Exchange Act.  Nor did Plaintiff even try to make a "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).

17

In ruling on the motion to dismiss the First Amended Complaint, this Court dismissed with prejudice the holder claims brought under the Exchange Act based on the case law cited by Defendant.  [DE 29, pp. 13-14].  But Plaintiff again tried to replead its holder claim under the Exchange Act in its Second Amended Complaint.  [DE 30, pp. 30-31].  Defendant again addressed this issue in his motion to dismiss the Second Amended Complaint [DE 31, p. 12], and again Plaintiff did not even try to counter Defendant's argument.  This Court granted Defendant's motion and again dismissed the holder claims *with prejudice*.  [DE 38, pp. 13-14].

Given that Plaintiff's attempt to pursue holder claims under the Exchange Act was clearly frivolous, and given that Plaintiff repeatedly tried to assert this claim without making any effort to advance a plausible argument for a changing the law, Plaintiff's Exchange Act claim was frivolous and was brought in violation of Rule 11(b).  *See de la Fuente v. DCI Telecommunications, Inc*., 259 F. Supp. 2d 250, 262 (S.D.N.Y. 2003) (imposing Rule 11 sanctions where plaintiff brought securities fraud claim that was time-barred, where plaintiff failed to advance a plausible tolling argument).  Accordingly, under the PSLRA, the court "shall" impose Rule 11 sanctions, with the presumptive sanctions being an award of attorneys' fees. *Thompson,* 610 F.3d at 636 (citing 15 U.S.C. § 78u–4(c)(2) and (3)).

**D.**     **Calculation of Reasonable Fees and Costs**

In determining a reasonable fee award, Florida has adopted the federal lodestar formula. *Beach Bars USA, LLC v. Indem. Ins. Corp. of DC*, No. 11-cv-60883, 2015 WL 11422318, at *1 (S.D. Fla. May 6, 2015); *see also Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985). Under the "lodestar" formula "the fee is determined by multiplying the number of hours reasonably expended on the litigation times the reasonable hourly rate." *Beach*, 2015 WL 11422318, at *1.

The Court "is itself an expert on the question" of the reasonableness of a claim for attorney's fees and "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). To determine a reasonable hourly rate, a court must look to the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id*. at 1292; *see also Rowe*, 472 So. 2d at 1151 ("the prevailing market rate" is "the rate in that community by lawyers of reasonably comparable skill, experience and reputation, for similar services"). In determining the reasonableness of claimed fees, Florida courts look to criteria set forth in the Florida Bar Rules, which the Florida Supreme Court has acknowledged are "essentially the same as those considered by the federal courts." *Rowe*, 471 So. 2d at 1150 & n.5.

The nature and number of Plaintiff's numerous pleadings made defense of this case especially time-consuming. First, Plaintiff filed a total of three complaints setting forth their claims against the Defendants, each one of which had to be independently reviewed and analyzed. Each complaint set forth numerous purported causes of action and included an extensive number of paragraphs of factual allegations. For example, the Second Amended Complaint contained 176 paragraphs. [DE 30]. The complaints raised complicated legal and factual issues, involving federal and state securities fraud claims, as well as other common law and statutory claims.

Against this backdrop, and pursuant to Local Rule 7.3(a)(3), Defendant submits that total amount of attorney's fees incurred by the law firm of Atherton Galardi Mullen & Reeder, PLLC ("AGMR"), in connection with the Dismissed Claims is **$61,650.50**. As the Eleventh Circuit has cautioned, fee applicants must exercise "billing judgment." *Am. Civil Liberties Union of Ga. v.*

*Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).  Accordingly, Defendant's attorneys have excluded from their fee application any "excessive, redundant, or otherwise unnecessary" hours. *Id*.

Pursuant to Local Rule 7.3(a)(4), attached as Exhibits 1-3 are the Affidavits of attorneys Scott Atherton, Terence Mullen, and Nadine Edenfield in support of this Motion, which describe (i) the identity, experience, and qualifications for each timekeeper for whom fees are sought; (ii) the number of hours reasonably expended by each timekeeper; (iii) a description of the tasks done during those hours; and (iv) the hourly rate claimed for each timekeeper.  Here is a summary:

| Billing Attorney | Hours | Rate | Fees |
|---|---|---|---|
| Scott Atherton (Lead Counsel) | 13.7 hours | $650/hour | $8,905.00 |
| Terence Mullen (Partner) | 68.45 hours | $590/hour | $40,385.50 |
| Nadine Edenfield (Associate) | 30.9 hours | $400/hour | $12,360.00 |
| **Totals** | **113.05 hours** | | **$61,650.50** |

Further, pursuant to Local Rule 7.3(a)(6), the Affidavits describe and document, with invoices all incurred and claimed fees and expenses not taxable.  Attached as Exhibit 4 to this Motion is the affidavit of fee expert Craig Rubenstein, Esq., confirming that $61,650.50 represents a conservative calculation of the attorneys' fees incurred by Defendant in defending against the Dismissed Claims.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant Croxall respectfully requests the Court enter an Order awarding attorneys' fees to Croxall in the amount of $61,650.50 and grant such other and further relief this Court deems just and proper.

**Local Rule 7.3 Certification**

Pursuant to Local Rule 7.3(a)(8) the undersigned certifies that on November 6, 2023, the undersigned provided a draft copy of this Motion to counsel for Plaintiff via email.  The parties subsequently conferred in good faith by phone and email and attempted to resolve disagreements regarding the issues of entitlement and the amount of fees.  Having so conferred, the parties continue to disagree regarding entitlement to and amount of fees.  The parties have been unable to narrow their disagreement as to the particular amount of fees set forth in the affidavits submitted with the Motion.

Dated: December 5, 2023.                    Respectfully submitted,

**ATHERTON GALARDI MULLEN
& REEDER PLLC**
1641 Worthington Road, Suite 100
West Palm Beach, Florida 33409
Telephone: (561) 293-2530
Facsimile: (561) 293-2593

By: */s/ Scott W. Atherton*
SCOTT W. ATHERTON
Florida Bar No. 0749591
TERENCE M. MULLEN
Florida Bar No. 0191957
Email: scott@athertonlg.com
terence@athertonlg.com
tracey@athertonlg.com
e-service@athertonlg.com

*Counsel For Defendant Douglas B. Croxall
and Dismissed Defendant Natasha Allas Croxall*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 5th day of December 2023, I electronically filed the forgoing with the Clerk of the Courts by using the CM/ECF system which will send a notice of electronic filing to all counsel of record on the below Service List.

By: */s/ Scott W. Atherton*
Scott W. Atherton
Florida Bar No. 0749591

## SERVICE LIST

| | |
|---|---|
| Riley W. Cirulnick | Peter R. Ginsberg (*pro hac vice admission*) |
| LORIUM PLLC | |
| Riley W. Cirulnick | Moskowitz Colson Ginsberg & Schulman, LLP |
| rcirulnick@rprslaw.com | |
| 101 NE 3rd Ave., Suite 1800 | 80 Broad Street, 19th Floor |
| Fort Lauderdale, FL 33301 | New York, NY 10004 |
| Telephone: (954) 462-8000 | pginsberg@mcgsllp.com |
| Facsimile: (954) 462-4300 | (212) 257-6455 |
| *Counsel for Plaintiff, Apollo Management Group, Inc.* | *Counsel for Plaintiff, Apollo Management Group, Inc.* |